UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTIN BRODIN, <br> Plaintiff, <br><br> v. <br><br><br> DAVID ROJAS, RAMON ROMAN, <br> JAMES POWERS, LT. ROBERT RICH, <br> GARY J. GEMME, Chief of Police, <br> MICHAEL O'BRIEN, City Manager, <br> THE CITY OF WORCESTER, <br> And John Does 1-10, <br> Defendants. | CIVIL ACTION <br> NO. 11-40179-TSH |

## ORDER AND MEMORANDUM OF DECISION
### March 25, 2014

**HILLMAN, D.J.**

### Background

Kristin Brodin ("Brodin"), has filed a federal civil rights claim against Worcester Policer Officers David Rojas ("Officer Rojas"), Ramon Roman ("Officer Roman"), James Powers ("Officer Powers"), Rober Rich ("Lt. Rich"), Gary J. Gemme, Chief of Police ("Chief Gemme"), Michael O'Brien, City Manager ("City Manager O'Brien"), The City of Worcester ("City") and Does 1-10 under 42 U.S.C. §1983 for violation of their constitutional rights[1]. Plaintiff has also filed Massachusetts state law claims against Defendants for violation of the

---
[1] Plaintiff concedes that John Does 1-10 should be dismissed.

Massachusetts Civil Rights Act ("MCRA"), Mass.Gen.L. ch. 12, §§11-H-I[2] and tort law claims for assault and battery, conspiracy and negilent and intential infliction of emotional distress. Officers Rojas, Roman, Powers and Lt. Rich are being sued in their individual and official capacities. Chief Gemme and City Manager O'Brien are being sued in their official capacities.

Specifically, Plaintiff alleges that Officers Rojas and Powers taunted, assaulted and battered her while she was in their custody. She further alleges that Lt. Rich signed off on false reports concerning the incident and failed to adequately supervise Officers Rojas and Powers. Defendants have moved for summary judgment (Docket No. 45) and to strike Plaintiff's statement of additional facts and exhibits (Docket No. 67). For the reasons set forth below, those motions are granted, in part, and denied, in part. Defendants have filed a motion for additional time file and opposition (Docket No. 78), which is denied. The Plaintiff has filed motions to strike exhibits related to Defendants' material statement of facts, to seal an exhibit and to strike the testimony of Defendants' expert (Docket Nos. 65, 66, 72 and 75), which are denied.

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a

---

[2] In the Complaint, Plaintiff alleges a claim pursuant to the Massachusetts Civil Rights Act, "112 M.G..L. c. 112, § 11IM." Chapter 112 of the Massachusetts General Laws deals with the registration of certain professions and occupations. Presumably, Plaintiff meant to cite to Mass.Gen. L. ch. 112, § 11I, which deals with the violation of constitutional rights.

2

"material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or " improbable inferences". *Id.* (citation to quoted case omitted). " ' The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

## The Parties' Motions To Strike

### *Defendants' Motion To Strike Plaintiff's Statement Of Additional Facts And Exhibits*

Defendants have moved to strike Plaintiff's exhibits to their statement of additional facts in opposition to summary judgment because: (1) they were not timely served and/or (2) Plaintiff failed to comply with Fed.R.Civ.P. 56 and L.R., D.Mass. 56.1.

*Untimeliness of Plaintiff's Filing*

Plaintiff's counsel filed the opposition to Defendants' motion for summary judgment and supporting documentation in this case after the 6:00 p.m. deadline on the day they were due. Defendants' motion to strike the submissions as untimely is denied. The Court has in two prior cases discussed counsel's habitual late filing through the Court's electronic filing system and will not rehash the issue at this time. Counsel is, by now, well aware that the Court's filing deadlines are serious matters and that future untimely filings will presumptively be stricken unless counsel can establish good cause for the late filing.

*Whether Plaintiff's Statement Of Facts/Supporting Exhibits Should Be Stricken As Objectionable*

Plaintiff has filed a response to Defendants' statement of material facts and her own statement of over *220* additional facts[3]. Defendants seek to have exhibits which support Plaintiff's material statement of facts stricken on the grounds that Plaintiff has failed to comply with this Court's rules. More specifically, Defendants move to strike: (1) what is essentially a reiteration of Officer Power's deposition on the grounds that the facts asserted are not concise and Plaintiff has failed to identify what facts are material and/or genuinely in dispute; (2) Plaintiff cites to testimony by her expert which purport to render a medical opinion, but instead are the expert's observations as to what is happening in the video, which speaks for itself; and (3) Exhibit 62-12 (also referred to as Exhibit 26) is mischaracterized by the Plaintiff and, in any event, is irrelevant.

I agree with Defendant's assessment that Plaintiff's statement of additional facts do not comply with the intent of LR, D.Mass. 56.1, which provides that the opposing party provide a

---

[3] Plaintiff's additional facts are inexplicably numbered 44-263, 108-111, rather than 44-267.

*concise* statement of *material* facts as to which there is *no genuine issue to be tried*. More troublesome, is that Plaintiff's statement of facts are replete with improper commentary and innuendo, are often more argumentative than factual and/or assert legal conclusions. Furthermore, *many* are irrelevant or based on inadmissible evidence.[4] While the Court will not at this time strike Plaintiff's statement of additional facts for such non-compliance, the Court will not consider irrelevant, immaterial, redundant or non-supported facts. Instead, the Court has included only those *facts* that are relevant to her claims against the individual Defendants.

As to Defendants' specific objections, I will not strike portions of Plaintiff's stated facts just because she has seen fit to needlessly regurgitate a substantial part of Officer Power's deposition. I will, however, ignore those facts which do not meet the criteria set forth in the preceding discussion. I agree with Defendant's that Dr. Chirkov's testimony is irrelevant and redundant with respect to the issues for which it is being cited and therefore, statements 116-118, 128, 188-89 and 194-99 are stricken.[5] Exhibit 26, which contains citizen complaints filed against the Worcester Police Department 14-24 years ago is stricken as irrelevant.[6] Therefore, facts 253-263 are stricken.

---

[4] Plaintiff objects to many of Defendants' statement of facts as irrelevant and inconcise. Plaintiff's also object that Defendants attempt to describe events which are depicted on the video on the grounds that the video speaks for itself. Plaintiff's objections are ironic given that her statement of additional facts suffer from the same alleged infirmities. The Court is hopeful that counsel for both parties will heed its comments and incorporate them into future filings.

[5] Statement 128 is stricken for the additional reason that it makes no sense.

[6] While I am striking the exhibit as irrelevant in time and place to the issues raised by Plaintiff's claims, I could just have easily stricken it as a sanction for counsel's mishandling of the document. In future filings with this Court, counsel for both parties should review their submissions with significantly more care than they have to date. The Court has had to spend an inordinate amount of time reviewing pleadings on cases involving counsel for these parties due to sloppy lawyering.

### *Plaintiff's Motion In Limine to Strike/ Exclude Evidence*

Plaintiff requests that the Court limit or exclude the testimony of Attorney John M. Collins the expert that Defendants have designated the issues of use of force and police practices. Defendants filed a motion to extend time to respond to this motion, which was opposed by the Plaintiff. The Court inadvertently did not rule on the request for an extension and consequently, no opposition was filed.

In general, Plaintiff asserts that Attorney Collins is not qualified to render some of the opinions "he pretends to give," and that he is improperly opining on issues which are in the province of the jury. Therefore, she argues, Attorney Collins testimony should be stricken as not meeting the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Having reviewed the Plaintiff's motion, the Court finds that the motion should be denied. First, based on her filing, the Plaintiff has not established that Attorney Collins is not qualified to give the opinions which are cited in support of the motion for summary judgment. More importantly, for purposes of the motion for summary judgment, the Court has accepted the facts as asserted by the Plaintiff and therefore, has not considered the opinions of Attorney Collins at issue. This ruling is without prejudice to her filing a *motion in limine* to exclude Attorney Collin's testimony should this matter go to trial. Defendants will at that time be permitted to file an opposition to any such ruling.

### *Plaintiff's Motion To Strike Exhibits Related To Defendants' Material Statement Of Facts*

On June 20, 2013, Defendants filed their motion for summary judgment and accompanying statement of material facts under Local Rule 56.1. *See Defs' Mot. For Sum. J.* (Docket No. 45) and *Statement Of Undisp. Material Facts In Sup. Of Defs' Mot. For Sum. J.* (Docket No. 47)("*Defs' Mat. Facts.*"). In their statement of facts, Defendants cited to an

incident report and booking documents. *See Defs' Mat. Facts,* at *Ex. 7*("Incident Report") and *Ex. 8* ("Booking Documents"). Plaintiff asserts that the Incident Report and Booking Documents should be stricken on the grounds that they were not timely disclosed. Additionally, she requests that any stated facts which cite to these documents be stricken as unsupported.

These documents were produced to Plaintiff less than a month before Defendants filed their motion for summary judgment. She argues that they were obligated to disclose the documents earlier as part of their automatic disclosures under under Fed.R.Civ.P. 26(a) and 26(e). Defendants argue that these documents did not fit into any document request or interrogatory propounded by Plaintiff, and, in any event, Plaintiff was already aware that Officer Roman's position was he was not present during her initial booking because he was transporting another prisoner (he so testified at his deposition in October 2011 and in an interrogatory response in March 2013). Defendants assert that they did not become aware until the mediation held on May 23, 2013, that Plaintiff was questioning whether Officer Ramos was present during this time period—counsel immediately showed Plaintiff's counsel the Incident Report and Booking Documents and provided copies to them on May 28, 2013.

While not condoning Defendants' failure to disclose these documents earlier[7], I am denying Plaintiff's motion. Plaintiff was given the information in the documents in October 2011 and March 2013. Her counsel saw the documents on May 23, 2013, and had physical possession of them on May 28, 2013. The Defendants filed their motion for summary

---

[7] The Incident Report and Booking Documents arguably should have been disclosed or at least identified pursuant to Fed.R.Civ.P. 26(a)(1)(A)(ii), as ones that Officer Ramon would use to support his defense. At the same time, there is at least a colorable claim that the documents were not subject to automatic disclosure because they are impeachment evidence.

7

judgment on June 20, 2013. Plaintiff filed her response on July 24, 2013 and, for the most part did not raise any issue about these documents. In fact, she admitted stated facts relying on these exhibits, or denied them for reasons unrelated to their having been disclosed in any untimely manner.[8] It was not until July 31, 2013, the morning of the hearing on Defendants' motion for summary judgment, that Plaintiff filed the instant motion. Under the circumstances, even assuming that Defendants' disclosure of the Booking Documents and Incident Report was untimely, Plaintiff was not prejudiced. Therefore, her motion to strike is denied.

## Facts

On August 18, 2008, in the early morning hours, Renee Marsolais ("Marsolais"), encountered Brodin at a gas station on West Boylston Street in Worcester, Massachusetts. Brodin, who was not known to Marsolais, was yelling obscenities and kicking Marsolais' car. Worcester police, including Officer Michael Foley ("Officer Foley"), were dispatched to the gas station. Marsolais did not want to press charges and therefore, the police officers did not charge Brodin with an offense at that time. Instead, they called a taxi to drive her home.

Marsolais, who lived on Brooks Street, in Worcester, MA, had driven home prior to Brodin leaving the gas station. She was surprised to see Brodin walking down Brooks Street just a few minutes later. Thereafter. Marsolais witnessed Brodin fight with a woman named Leslie Roman ("Roman"), whom she knew as "Flaca [ph. Flocka]." Marsolais saw Brodin and Ms. Roman hitting each other, but for the most part, it was Roman hitting Brodin. Officer

---

[8] In *one* response, Plaintiff states that "even if the Court rejects [her] arguments that the Irzarry record is in admissible hearsay and should be excluded in any event due to failure to timely disclose …. ". *Pl's Statement of Material Facts and Responses To [47] Defs' Fact Statement, In Opp. to [45] Defs' Mot. For Sum. J.* (Docket No. 61), at p. 9. ¶ 19. However, the first time that Plaintiff seeks to strike these records is one week later in the instant motion and Plaintiff never argues that the records should be stricken as inadmissible hearsay.

Foley, who was patrolling the Brooks Street area at about 2:15 a.m., came upon Brodin on top of Roman, punching and slapping her. Brodin was arrested.

Roman has testified that Brodin slapped her on the face pointblank. In order to protect herself, Roman pushed her back at which point, Brodin slapped her again. At that point, Roman grabbed Brodin, pulled her by the hair, threw her on the ground. They then grappled with each other on the pavement— Roman sometimes on top and Brodin sometimes on top. Roman hit Brodin about four times.

Brodin was eventually handcuffed and placed in the patrol wagon, which was driven by Officer Roman, and transported to the Worcester Police Department ("WPD"). Because Officer Roman was transporting a female, he called in the starting mileage of the wagon to the dispatcher when he began the transport at 2:36 a.m., and when he arrived at the WPD six minutes later at 2:42 a.m. According to Brodin, the police officers who arrested her at the Brooks Street altercation did not kick, punch or assault her in any way during her arrest.

When the patrol wagon arrived at the WPD, Officer Rojas removed Brodin from the wagon and guided her to an interview room, which was used as a holding cell for female detainees. Officer Rojas recalled that when he removed Brodin from the patrol wagon, she had marks and abrasions on her face and her appearance was disheveled, consistent with having just been in a fight.

At approximately 2:39 a.m., while Officer Roman was en route to the WPD with Brodin, the dispatcher requested the patrol wagon to go to 7 Bancroft Street, Worcester, to transport a male arrestee, Neftali Irizarry ("Irizarry"). As soon as Brodin was removed from the patrol wagon following her arrival at WPD at 2:42 a.m., Officer Roman left WPD to pick up

9

Irizarry. WPD computer records confirm that Officer Roman was the transporting officer for Irizarry. Officer Rojas assisted in placing Brodin in an interview room. After placing Brodin in the interview room, used as a female holding cell, Officer Rojas returned to the Service Division office upstairs at WPD to operate the booking video recording system.

Officers Powers removed Brodin from the interview room/holding cell approximately 2:51 a.m. for a first attempt at booking. Officer Jennifer Humphrey ("Officer Humphrey"), who is sitting behind the booking desk, was in charge of trying to book Brodin. During the initial booking effort, Brodin makes racial slurs and derogatory remarks about Officers Powers, Officer Humphrey and the African American civilian matron standing just outside the view of the camera. She refuses to provide her identifying information for the booking and the first attempt at booking her is abandoned. Prior to Officer Powers stopping the booking, Brodin requested to be brought to the hospital. Neither Officer Roman nor Officer Rojas ever appears on the video during the initial booking attempt.

Brodin testified at her deposition that when she arrived at the WPD at approximately 2:42 a.m., she was brought directly to the booking desk area. She also testified that when she came out of the holding cell at 2:51 a.m. with Officer Powers, she was agitated because she had already been "beat up" by Officers Rojas and Roman in a hallway between the booking area of the cells. According to Brodin, Officers Roman, Rojas and Powers assaulted her by pushing her head back, punching her in the stomach, kicking her and slapping her in the face. She states that the assault took place in an area to the side of the booking desk. Brodin was pregnant at the time.

At the next booking video segment, Irizarry can be seen being booked at approximately 3:06 a.m., with Officer Roman removing his handcuffs. At approximately 3:23 a.m., Officer

Roman can be seen escorting Brodin to the bar in front of the booking desk in order to begin the second attempt at booking her. Officer Rojas follows behind, holding the steel handcuffs that Brodin had broken off her wrists while she was in the juvenile cell.

During the booking of Irizarry, there is a banging noise in the background that is presumably Brodin banging her handcuffs inside the cell hard enough to break them. There is no video recording of Brodin while she is in the cell. At approximately 3:26 a.m., while being asked questions during the second booking process, Brodin responds to Officer Humphrey that she has injuries to her forehead and her left wrist is broken. She states that she wants to go to the hospital. Officer Roman questioned whether Brodin's wrist was broken. When Officer Humphrey asks whether the injuries occurred before the arrest, during the arrest, or after the arrest, Brodin states, "during the arrest." At no time during the second booking video does Brodin state that she was beaten or injured by Officers Roman and Rojas. However, prior to the first attempt at booking her, Brodin does say that the "cops fucked me up" and later asks if they are going to fuck her up again.

During the second booking attempt, Brodin continues to swear, insult the police officers and use racial slurs. Officer Roman engages in a verbal back and forth with Brodin. She calls Officer Roman a derogatory name and tells him she'll "fuck him up." Officer Roman responds, "go ahead make your move." Around this time, Officers Rojas and Powers took actions to prevent a confrontation between Officer Roman and Brodin; Officer Powers physically stepped in when it appeared that Brodin and Officer Roman were moving towards, each other and at one point Officer Roman Rojas took Brodin's wrist in order to prevent her from reaching towards Officer Roman.

At approximately 3:29 a.m., Brodin is led by Officer Powers into an adjoining room to be fingerprinted and photographed. Officer Roman remains nearby and ultimately, moves into the doorway of the room. At 3:29:10, Brodin can be seen taking steps toward Officer Roman and yelling, "Get him the f*** out of here." At 3:29:19, Brodin reaches her hand out and strikes Officer Roman's face. Officer Roman responds with an open palm strike to the left side of Brodin's face.

After that confrontation, Officer Powers brings Brodin to the floor with an arm bar takedown maneuver while Officer Roman restrains her legs. Officer Rojas steps into the room to assist in handcuffing her and Officer Humphrey brings a pair of handcuffs into the room and hands them to Officer Rojas. In a matter of seconds, Brodin is handcuffed, stood up, and brought outside the fingerprinting room. Brodin was forcefully caused to kneel and her feet are shackled. She is then taken out the sally port door to be transported to the hospital University of Massachusetts Medical Center) at approximately 3:30 a.m. Brodin was diagnosed with a fracture to the right nasal bone and deviation of the cartilaginous septum.

Brodin was charged with assault and battery, assault and battery on a police officer, vandalizing property, malicious destruction of property over $250.00 and disturbing the peace. She pled guilty to assault and battery, assault and battery on a police officer and disturbing the peace, the property charges were dismissed, and she was given a suspended sentence of six months in the House of Corrections and placed on probation for two years.

Brodin filed a complaint with WPD alleging that excessive force was used during her detainment, which was investigated by Lt. Rich, commanding officer of the cell room at the time of the alleged incident. Following the investigation, it was determined that Officer Roman did not use unnecessary force, but his demeanor and verbal interactions with her were

deemed to be inappropriate, unprofessional and not within department standards. He was counseled by Lt. Rich regarding his conduct.

Officer Powers has dealt with intoxicated people in custody of the WPD lockup--sometimes they act rationally and sometimes emotionally. He has learned on the job at the WPD that once intoxicated arrestees calm down, they are likely to behave rationally and are easier to work with. It can take two-three hours for this to happen. Powers stopped the initial attempt to book Brodin to give her time to decompress.

Officer Powers was trained at the WPD regarding the use of force policies and on how to deal with assaultive subjects. Although officers are trained to try to exhaust every means necessary before using force, a palm-heel strike may be used if somebody is assaulting or using a weapon on an officer; in order to "create distance" between an officer and an assaultive subject. Officer Powers has been subject of two other civilian complaints: One for unprofessionalism and one alleging that he beat an individual in a holding cell.

Prisoners arriving at the police station are brought into the basement of the WPD via a sally port, and either put in a holding cell, a/k/a the "drunk tank" or they go into regular cells, except for juveniles or females – who go to cells in areas designated for them. Once a prisoner comes in to the WPD and is about to be booked, a booking officer downstairs in the booking-cell room area is responsible to call an officer upstairs to activate video surveillance and recording. There is no videotape that shows what Brodin's physical appearance was when she got out of the police patrol wagon or when she first cross the metal blue door that
If Officer Powers noticed an injured arrestee at the sally port, he had the discretion to call an ambulance to transport that person for medical care.

**Discussion**

*Whether Officers Rojas, Roman and/or Powers Violated Plaintiff's Constitutional Rights*

In order to establish a claim under Section 1983, Brodin must establish that a person acting under the color of law denied her a right secured by the constitution or by federal law. There is no question that the individual officers were acting under the color of law and therefore, the issue before the Court is whether they violated any of Brodin's constitutional rights. Brodin alleges that these Defendants violated her rights under the Fourth Amendment by using excessive force against her during the booking process.

As for Brodin's MCRA claims, she must prove that her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. *See* Mass. Gen. L. ch. 12, § 11I. The MCRA is the state "counterpart" to Section 1983 and, in general, is coextensive therewith. The primary difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of rights occurred "by threats, intimidation or coercion." *Bally v. Northeastern Univ.,* 403 Mass. 713, 532 N.E.2d 49, 52 (1989). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury or harm.' " *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass.2009)(citation to quoted case omitted). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. *Id.*

In order to prevail on Fourth Amendment excessive force claim, Brodin must show that these Defendants' actions were objectively unreasonable because they used more force than necessary under the circumstances and facts known to them at the time. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Whether the force used was objectively reasonable in a given case

requires a fact-specific inquiry of the totality of the circumstances. *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir.2007). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Court also must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" and that "[n]ot every push or shove ... violates the Fourth Amendment." *Id.*, at 396–97 (internal quotation marks and citation omitted). The officer's subjective motivation or intent is irrelevant to the analysis. *Id.*, at 397.

There is scant evidence to support Brodin's claim that she was beaten by one or more of these Defendants prior to the first booking procedure which commenced at 2:51 a.m. Assuming that the she can refute the evidence that Officers Rojas and Roman were not in the vicinity at the time she claims to have been beaten, this becomes a classic case of he said/she said. The Court is unable to assess credibility at this stage of the proceedings and therefore, such cases must be permitted to go forward.

As to the later incident in the booking room, there is video evidence which establishes that Brodin is highly impaired, combative, uncooperative and unpredictable. At the same time, Officers Rojas, Roman, Powers and others are unable to defuse the situation and Officer Roman's actions appear to exacerbate it. Consequently, there is a physical confrontation during which Brodin slaps Officer Rojas and he responds, hitting her with an open palm. Brodin is then forcibly taken to the ground and handcuffed. At some point before, during or after her arrest, Brodin suffers a broken nose. In a light most favorable to her, Brodin suffers the broken nose when the officers take her down during the altercation in the booking room. The Court is mindful that police officers must make split –second decisions in light of the immediate threat posed by the suspect and

15

whether the suspect is actively resisting the officers. Furthermore, an officer's subjective intent, even if maleficent, will not turn an objectively reasonable use of force into a Fourth Amendment violation. Nonetheless, reasonable minds viewing the videotape could reach different conclusions as to whether the amount of force utilized buy these officers under the circumstances was objectively reasonable. Therefore, summary judgment is denied with respect to Brodin's Section 1983 claim for excessive force.

While the Section 1983 claim survives, summary judgment shall enter for the Defendants on the MCRA claim. As discussed above, violation of the MCRA requires that a defendant have interfered or violated (or attempted to interfere) with an individual's rights as secured under the United States Constitution and/or the Massachusetts Constitution by means of "threats, intimidation or coercion." "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion." *Longval v. Comm'r of Corr.,* 404 Mass. 325, 333, 535 N.E.2d 588 (1989). To be actionable, the officer's actions must amount to "an attempt to force someone to do something the person is not lawfully required to do." *Freeman v. Planning Bd. of W. Boylston,* 419 Mass. 548, 565, 646 N.E.2d 139 (1995). Plaintiff's undeveloped and conclusory allegations that these Defendants acted to shut her up and therefore, interfered with her right to free speech by means of threats, intimidation and coercion, as a matter of law, fails to make out a claim under the MCRA. Therefore, summary judgment shall enter for the Defendants on Plaintiff's MCRA claim.

<u>*Whether The Individual Officers Are Entitled To Qualified Immunity On The Section 1983 Claim*</u>

Officers Roman, Rojas and Powers assert that they claims against them should be dismissed on the grounds that they are entitled to qualified immunity.

> 'Qualified immunity is a judge-made doctrine designed to "balance two important interests—the need to hold public officials accountable when they

> exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably " ' The doctrine thus protects from liability for civil damages all public officials other than those who, 'from an objective standpoint, should have known that their conduct was unlawful.'
>
> The qualified immunity inquiry has two parts. A court must decide whether the plaintiff has made out a violation of a constitutional right and, if so, whether the right was clearly established at the time of the violation. This second part, in turn, has two aspects. The first focuses on the clarity of the law at the time of the violation. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights. The "salient question" is whether the state of the law at the time of the violation gave the defendant fair warning that his particular conduct was unconstitutional.

*Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013)(internal citations and citation to quoted case omitted).

These Defendants are not entitled to qualified immunity with respect to the Section 1983 claim for excessive force. Simply put, it was clearly established at the time of the incident that the Fourth Amendment prohibits a police officer from utilizing excessive force in subduing a suspect—even if that suspect has herself engaged in assaultive conduct. Furthermore, taking the facts in the light most favorable to Brodin, reasonable officers in their position would have known that their conduct violated her rights

The Court will re-visit this issue at the close of Plaintiff's case when the facts are more fully developed and the Court will be able to assess the credibility of the witnesses' testimony.

*Plaintiff's Claims Against the City, Chief Gemme, Lt. Rich and City Manager O'Brien*

The Court does not find it would be beneficial to undertake an analysis of the supervisory and *Monell* claims against the City, Chief Gemme, Lt. Rich and City Manager O'Brien. It is the Court's intent to bifurcate the trial. The Section 1983 claim against the individual officers will be tried first. If the jury finds that one or more of the individual officers committed a constitutional
17

violation, the Court will schedule a separate trial on the supervisory and *Monell* claims. Prior to such trial, the Court will likely permit the parties to file dispositive motions on such claim.

*Plaintiff's State Law Claims For Assault, Intentional Infliction of Emotional Distress And Conspiracy*

Plaintiff fails to make a developed legal argument as to why her claim for assault and battery should survive summary judgment. Although the Court is tempted to find the claim waived, the legal and factual underpinnings of this claim are self evident. Because there is a genuine issue of material fact as to whether the actions of Officer Powers, Rojas and/or Roman constituted an assault and battery on the Plaintiff, summary judgment is denied.

Plaintiff concedes that her claim for emotional distress sounds in negligence and should be dismissed. She also concedes that her conspiracy claim should be dismissed against Officer Powers. As to her conpsiracy claim against Officers Roman and Rojas, Plaintiff asserts that a jury could infer that the Officers Roman and Rojas beat her out of site of the cameras. The sum total of her legal argument opposoing summary judgment is that "[e]ach of them would have to rely on the other to ignore his duty to report the incident and the jury could infer that they had an expclicit or tacit understanding to do so." The legal and factual underpinning of this claim are not self-evident. Given that Plaintiff cites to no specific facts, makes no legal argument and cites to no legal authority in support of this claim, I find that it is waived. Accordingly, summary judgment shall enter for the Defendants on Plaintiff's negligent/intentional infliction of emotional distress and conspiracy claims.

**Conclusion**

It is hereby Ordered that:

1. Defendants' Motion For Summary Judgment (Docket No. 45) is *allowed*, in part, and *denied*, in part;

2. Plaintiff's Motion For Leave To File Document Under Seal (Docket No. 65), is *denied*, the document should not be filed[9];

3. Plaintiff's Motion For Leave To File Document Under Seal (Docket No. 66), is *denied*, as duplicative of the previous motion and therefore, moot;

4. Defendants' Motion To Strike Plaintiff's Filings in Opposition To Summary Judgment (Docket No. 67) is *allowed*, in part, and *denied*, in part;

5. Plaintiff's Motion In Limine To Strike/Exclude Evidence (Docket No. 72) is *denied*;

6. Plaintiff's Motion To Strike [47-7] And [47-8] Exhibits Related Portions Of [47] Defendants' Statement Of Facts In Support Of Summary Judgment (Docket No. 75) is *denied*; and

7. Defendants' Motion To Extend Time For Filing Of Opposition To Plaintiff's Motion In Limine To Exclude Defendant's Expert (Docket No. 78) is *denied*.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[9] If Plaintiff wishes to seal an exhibit filed in support of her statement of material facts, she should file the motion to seal either before the date the statement of facts is due be filed— or *at the latest,* the date on which the material statement of facts is due—*not two days later.*